The final case for argument is 24-1164 Magnum Magnetics v. United States. We are here today on a scope ruling by Commerce covering and dumping countervailing duty order on flexible magnets. What does that order cover? Flexible magnets, which are defined as magnets with a flexible binder, polymers, rubber, combined with a material that can be permanently magnetized. The order goes on to say that subject flexible magnets remain subject to the order if they are bonded with plastic or any other material regardless of composition. There's a single exclusion for printed magnets, not an issue here. And the order ends by saying every magnet that meets the physical description and is not specifically excluded is covered. Okay, can I just, you know, we've got statutory construction issues all the time. Then we have this claim construction movement where we're construing claims all the time. And now we've got this, I mean, this language here, the regulation, the language of the regulation seems to me, so tell me why I'm wrong, to give pretty broad, very broad discretion to the secretary to decide whether or not, whatever the language of the scope is, whether he goes to the K-1 or not and what uses he makes. I think the regulation gives him really a lot of authority, one, because it uses may several times, two, because it uses discretion several times, and three, you know, all the language here points to he gets to decide whether or not he goes to the K-1 factors. And I think, Your Honor, in that situation here, it's in violation of this court's own instruction on how this is to occur. Jump right into K-1, but this court just yesterday in Vandewater in 23-1093 talked about the meridian factors and about the K-0 factor. If that inquiry begins, the language of the order is paramount. And if the language of the order is unambiguous, it's dispositive. Well, nobody, I mean, you have, that's. That was the rule. And the rule was modified, and the rule was modified, as I understand it, to provide express discretion to the secretary in every case. Why am I wrong? Because the secretary, when they revise the regulations, again, we're doing it in order to bring in meridian and bring it in line with this court's instructions, and that the, if the unambiguous language is dispositive, and they said this in there, that they may use it. And they explained when they may use it, it's. But that's not this case. I mean, you're resting on the word appears. They didn't say, this language is clearly and unmistakably unambiguous. And it says, it said, it appears to fall within the scope of the order. We can quibble about what appears mean, but I don't think appears to fall within the scope of the order is a dispositive ruling on the clear, that the language is clear and unambiguous and this falls within it, full stop. They never identify what the ambiguity is, that they were using the interpretive sources to interpret. What were they interpreting? They themselves didn't say they were interpreting anything. They were just finding out if they could exclude a particular product that, again, appears to be covered, right? You have a magnet. Nobody disputes. It's a subject-flexible magnet, and nobody disputes that it is bonded to a piece of plastic, and nobody disputes that the order talks about. Would you agree that under the current enactable regulation, that the secretary has the discretion to look at the language of the order and consult the K-1 materials? When the secretary issued the right... That is our precedent right now, isn't it? I'm sorry. That is our current precedent. That is the precedent. Where the language is unambiguous, as the court just said in Vandewater, which was just issued yesterday. Let's put that aside. Yes. The issue is whether Commerce can turn to K-1 in interpreting the plain language of the order. Your Honor, I would agree, but the K-1 sources are for interpretation of an order. Here, Commerce didn't say that they were interpreting any particular term within the order. That's a key distinction here. What the Commerce secretary did when Commerce revised the regulations, they talked about that prior to May, it's that determines the language of the scope is not itself dispositive. It is not dispositive using no interpretive tools whatsoever. They weren't using interpretive tools for any particular language within the orders itself. It was using these tools to say that this product is excluded, but we're not talking about the specific exclusion. The orders have a very specific exclusion and only a single exclusion. Can I go back, take you back to your reference to the case we issued in Vandewater? I don't remember what the name was, but my recollection of that case is they were dealing with the 2020 regulation and not with the 2021 regulation. They explicitly called that out. If they were relying on a regulation that said something else, that gives us free reign to rely on a different regulation that explicitly wanted to go farther than the earlier regulation. I would have to double check that, Your Honor, but as I noted, in this regulation, If I'm right, am I right? If I'm right about what they said and what this was, I'm correct that that doesn't help you. In fact, it may even cut the other way. Correct, but you still have to look, Your Honor, at when Commerce issued its new regulations. When it issued its new regulations, it talked about when it would exercise that discretion to use the K-1 interpretive sources. That's when they talked about how it's not dispositive. Here, there is no language in the decision by Commerce stating that there's any ambiguity or there's some uncertainty as to the language itself that needed to be reliant on these interpretive guides. Your interpretation of the regulation is that that's what the Secretary, before going to K-1, the Secretary is required to establish that there's an ambiguity and describe what that ambiguity is before going to K-1. And that's the way you read the regulation? Correct, Your Honor. That still remains the case, and again, that's what this Court indicated in Meridian, which is what the revised regulations are going into. Leading us... Counselor. Oh, I'm sorry. Appendix 578. Yes, Your Honor. The language in the last, the last complete paragraph. It says, according and based on the plain language of the scope, it's talking about the plain language of the scope, SIPROM's product appears to fall within the scope of the orders. And at that point, Commerce consulted the K-1 materials to reach its decision. I think that's pretty, that impacts your argument quite heavily. Your Honor... I mean, you seem to, at this point, lose both under the 2020 regulations and the new regulations. Your Honor, I'm not reading it that way. Commerce talks about exactly what the order specifies. Its language is a flexible magnet bonded to plastic or material of any composition. Undisputed that the product before them met those limitations. Now, they use the word appears, but they don't identify which particular element apparently is not met by it. They go to the K-1 factors, as they say, to find out if it should be excluded from the scope of the order. But the purpose of the scope ruling is to determine if a product in front of them is within the same class or kind of merchandise that's discussed in an order. It's not talking about exclusions from it. It's looking at whether it actually meets the limitations within the language of the anti-dumping duty order. And, yes, they use the word appears, but they don't identify what specifically they're actually looking at here. But I would like to turn to the K-1 factors themselves, Your Honor, because it's unsupported by substantial evidence. Even if you were to accept they could go to the K-1 factors, they make two arguments. That somehow there's some functional flexibility requirement, one. And, two, that it's a substantially different product. On the functionally inflexible, they rely on two sources. The first being the US ITC's report. And in that one, Your Honor, they say that it indicates that, the ITC indicated that if a product that is included with a flexible magnet is twisted and so forth and it's broken, it's no longer covered by the order. ITC said no such thing. The ITC had no discussion about products bonded. It merely said that a flexible magnet can be twisted, punched, slit, bent, and it doesn't lose magnetic properties. There's no evidence that doing anything of that kind to this product results in a loss of magnetic properties. The orders don't talk about the product itself being damaged and so forth. It talks about the loss of magnetic properties in the ITC report. Interdesign dealt with a rigid product. Leaving aside, I would argue that was wrongly decided, but that dealt with a rigid metal that was bonded to a flexible magnet. Here we don't have it rigid. Now Commerce tried to shoehorner it, calling it a rigid plastic blade, but all the evidence shows that it can be flexed, that it's not rigid, that it can be bent. And even Commerce conceded that it could be bent. And so what they fall back on is, well, it's not pretty anymore, essentially. That once it gets bent to an extreme degree, you know, it's marred. Well, the orders don't talk about aesthetics. The orders talk about whether you have flexible magnet bonded to plastic or material, any other composition. And that's what you have here. They're adding something and they're using these K1 factors going beyond the K1 factor sources, reinterpreting them in a way to create a new exclusion that doesn't exist anywhere in the order itself. And there's no evidence from the underlying investigation that there's any concern with the aesthetics of a product. Their final point on this was on the substantially different product, because now you've attached a piece of plastic to a flexible magnet and they rely on NAI, which dealt with surgical drapes. But again, that ruling is irrelevant here. That ruling dealt with textile drape that had pockets into which flexible magnets were just inserted. It was the lack of bonding is what was at issue in NAI. The flexible magnets were not bonded to other material. That's not the issue here. So NAI has no relevance whatsoever to the question presented here. And again, it runs square into the language itself, saying that a flexible magnet remains subject even if it is bonded with a plastic or material of any other composition. That's not a substantially different product that somehow is excluded. The order itself contemplates that a flexible magnet would be covered if it's attached to another material of another composition. I see my time is almost out. If you have any other further questions, I'll save it for above. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Christopher Berridge on behalf of the United States. The United States respectfully requests that the Court affirm the judgment of the Court of International Trade because Commerce reasonably determined that Sifron shelf dividers were outside the scope of the anti-dumping and countervailing duty orders. As the Court has essentially previewed in speaking to my colleague, this case should be decided under the new regulations that do permit Commerce to look at the K-1 factors when interpreting what the language of the scope is. And as the Court mentioned when my colleague was speaking, the Vandewetter case is referring to the preview. So is it your view that under the new regulation if Commerce said, language is unambiguous, but we can still go, can they still go to the K-1 factors if there's a conclusion event? This language is fudgy. So it appears to, I don't know what appears to mean. But if they had said, we construed this language to be unambiguous. So they're permitted under the new regulations to just look at the scope and say, the language of the scope is clear, this product falls within the scope and they can end the inquiry there. In this case, they didn't do that. They said it appears, but that doesn't end the inquiry. It's not dispositive. And that's what the new regulations. Could they say this language is clear but we want to take a look and look at the K-1 factors and see if perhaps some further light can be shed on this. I think that Commerce could look at the language and say it appears clear on its face or that the language itself there's not a term that we're particularly concerned about necessarily but we want to take a look at the K-1 factors to see if this product actually fits the scope. So in this case we have plastic shelf dividers that you would see at CVS. Can I just make sure we have your answer to the question?  If they said the language is unambiguous under the regulation can they say I think what you said is yes it's unambiguous but we still think that despite the unambiguous language other things might shed light on how we should construe it. As the court was saying with my colleague there is broad discretion here in the new regulations that they may consider in K-1 now it reads as that in determining whether the product is covered by the scope of the order secretary will consider the language of the scope so the language obviously has to be considered but then they may make a determination on this basis of loan if it's within the language of the scope if it's dispositive so if it's not dispositive then they can move on to the other factors Just as a policy matter I know we don't do policy but doesn't this what your construction of the regulation dislodge any reasonable reliance that I think we're in the system and the people you would want people out there to know if there's a clear order out there what's covered and what's not shouldn't people be able to rely on that going forward and if so how does that coincide with your interpretation that even if everyone in the world would construe the scope order to cover something 20 years down the road somebody Commerce can reinterpret it based on other things and say never mind Yes, so the clear language of the scope order there would be cases where it would be unambiguous and Commerce would find that it's within the scope and I take the court's point that there could be that there may not be clarity with certain importers but the K1 factors are not unlimited there are descriptions of the merchandise containing the petition descriptions of the merchandise in the initial investigation, previous determinations by Commerce and determinations of the ITC so it's not indefinitely unbounded there are things that importers could look at and say does this fall within the scope? We're not sure so we're going to ask for a scope request which as in scope requests you're looking at that's why they're submitted, that's why lawyers submit them for their clients to see whether they fall into the actual scope and in this case you see in SIFRA on scope they talk about these four factors under the K1, under the new regulations this is how we interpret it we're not sure how Commerce interprets it but this is how we interpret it and so there are it's not a situation where an importer would have no idea there are some things that would be factored in in the K1 factors it's not completely unlimited and as the court held last year in Sahatai Steel that was sort of was just denied on that that if the scope order doesn't clearly answer the scope inquiry so if there's a scope inquiry that is submitted if scope inquiry is submitted then the regulations the current regulations would permit if not mandate that Commerce would look at the K1 materials and as the court quoted this is particularly true where a scope ruling is requested subsequently disputed and eventually appealed to this court so it makes sense that the K1 factors that's currently written in the new regulation would be used to actually look and see is as I was studying earlier are these shelf dividers are they actually flexible magnets and they're not flexible magnets because they're not flexible they don't fit within the scope so it makes sense in this case that Commerce would look at the actual regulations and say this covers flexible magnets what are we dealing with here in the scope request it's a shelf divider it's a plastic rigid shelf divider it doesn't fit within the scope of the actual language if you look at the K1 factors so that's why they permissibly went to those other factors are there any other questions thank you thank you your honor William Marshall on behalf of SIFRON I'll keep my comments short I just want to say a couple of things one about Plaintiff Apelli's position is internally contradictory they want you to rely on the plain meaning of the scope but they want you to exclude certain words from the scope i.e. flexible in the ITC's definition of a flexible magnet subject to the order they specifically identified how they would properly identify a flexible magnet subject to the order something that could be bent and twisted that maintains its magnetic properties i.e. both flexible and magnetic in this case the substantial evidence clearly establishes that SIFRON's shelf divider is not flexible and therefore not covered by an order covering flexible magnets and so to buy into Plaintiff Apelli's interpretation would require ignoring certain terms from the scope language that they themselves say is plain on its face which is internally contradictory another point to raise here is whether or not the plain language of the scope is a threshold question in fact it isn't commerce gave itself in its notice of final rule making commerce itself said that the K1 factors are tools to help interpret the plain language of the scope they could find make a scope determination on the language in certain cases but they recognize that that's probably an exception and not the common rule and so commerce need not make a first determination a so called K0 where they say yes the scope language here is dispositive and we cannot go further in fact the rules give commerce discretion to either stop at the interpretation of the scope language if and when appropriate and or proceed to the K1 factors which are in commerce its own words in its notice of final rule making tools to interpret the plain language of the scope and that's consistent with Meridian thank you very much your honors I would point you to at least appendix 349 350 332 to 335 348 to 350 361 565 to 68 all of this shows flexing your honor I didn't hear what you said they all show flexing of the divider it's clearly being flexed it's been twisted this is not a rigid product it is a flexible product and all the evidence on the record shows that to the other point your honor we've been talking about the regulations they never said it wasn't dispositive they never explained why it wasn't dispositive they go through what the order says they go through what the undisputed shelf dividers have squarely falls on there they never say that it wasn't dispositive or the reasons why and I submit your honor that discretion used the K1 factors as interpretive guides which is what they are interpretive guides there has to be a reason because it's not dispositive how and why is it not dispositive it's silent on that they just went to the K1 factors because they wanted to well that's whim that's not any sort of reliance meaning reliance interest that people need to have in how these orders are interpreted if there's no further questions your honor asking you to vacate the decision thank you